581 A.2d 607

**COMPOSITION ROOFERS LOCAL 30/30B, Appellants,**

v.

**Bernard N. KATZ, Esq. and Meranze and
Katz, a partnership.**

Superior Court of Pennsylvania.

Argued June 6, 1990.

Filed Oct. 9, 1990.

Regina C. Hertzig, Philadelphia, for appellants.

Thomas A. Allen, Philadelphia, for appellees.

Before CAVANAUGH,[1] TAMILIA and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from an order which sustained the preliminary objections of appellees and dismissed the action filed by the Composition Roofers Local 30/30B, (hereinafter referred to as "Union"). For the reasons outlined below, we affirm.

The underlying facts are as follows. The Union retained Bernard Katz, Esquire, and the law firm of Meranze & Katz, (hereinafter collectively referred to as "Katz"), to advise it on all legal matters. In October of 1986, thirteen

---

1. At the time of oral argument, The Honorable James R. Cavanaugh recused himself from this case and neither voted nor participated in this matter.

of the Union's former officers and agents were indicted in the United States District Court for the Eastern District of Pennsylvania for its alleged criminal attempts to benefit the Union and its members. *See United States v. Roofers Local 30*, 686 F.Supp. 1139 (E.D.Pa.1988), *affirmed* 871 F.2d 401 (3rd Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 363, 107 L.Ed.2d 350 (1989). In response to the Union's request, Katz advised that the Union could lawfully pay the legal expenses of the thirteen then current and former Union officers and employees who were under indictment. On November 25, 1987, the thirteen defendants were convicted of 152 counts of racketeering, RICO conspiracy, bribery of federal, state, and local officials, mail fraud, extortion, illegal kickbacks from providers to an employee benefit plan, embezzlement from the Union's legal services plan, and collecting debts for organized crime. None of the thirteen individuals was convicted of illegal use of union funds or violation of 29 U.S.C.A. § 501. On January 8, 1988, Katz advised the Union that it was lawful for the Union to pay for the appeals of the now convicted criminal defendants. The Union voted to authorize the payment of the attorneys' fees for the indicted Union officials and employees. The Union expended over one million dollars in attorneys' fees and related costs.

On November 9, 1988, the Union filed the instant action against Katz. On February 1, 1989, the Union filed an amended complaint alleging legal malpractice and common law breach of fiduciary duty. On March 23, 1989, Katz filed preliminary objections in the nature of a demurrer. On November 1, 1989, the trial court entered an order granting Katz' preliminary objections and dismissing the Union's complaint. The Union filed this timely appeal. It raises one issue for our consideration: whether the Union's complaint states a cause of action sufficient to withstand Katz' preliminary objections in the nature of a demurrer.

We note initially that preliminary objections in the nature of a demurrer admit every well-pleaded fact in the complaint and all inferences reasonably deducible therefrom. *Rosen v. Empire Valve and Fitting, Inc.,* 381

Pa.Super. 348, 352, 553 A.2d 1004, 1005 (1989). It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. *Id.* When determining whether preliminary objections in the nature of a demurrer was properly granted, an appellate court must accept as true all properly pleaded material facts. *Roach v. Port Authority of Allegheny County,* 380 Pa.Super. 28, 30, 550 A.2d 1346, 1347 (1988). We must confine our analysis to the complaint and decide whether sufficient facts have been pleaded to permit recovery if the facts are ultimately proven. *Id.* The demurrer may be granted only in cases which are so free from doubt that a trial would certainly be a fruitless exercise. *Smith v. Brink,* 385 Pa.Super. 597, 600–01, 561 A.2d 1253, 1255 (1989).

To set forth a legal malpractice cause of action, three elements must be established: (1) the employment of the attorney or other basis for duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence was the proximate cause of damage to the plaintiff. *McHugh v. Litvin, Blumberg, Matusow & Young,* — Pa. ——, 574 A.2d 1040 (1990). In any cause of action for malpractice, some harm must be shown to have occurred to the persons bringing the action, *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983). An attorney is negligent in a malpractice case if he fails to use ordinary skill, knowledge, and care which would normally be possessed and exercised under the circumstances by members of the legal profession. *McPeake v. William T. Cannon, Esquire, P.C.,* 381 Pa.Super. 227, 553 A.2d 439 (1989). An informed judgment on the part of counsel, even if subsequently proven erroneous, is not negligence. *Mazer v. Security Insurance Group,* 368 F.Supp. 418 (E.D.Pa.1973), *affirmed* 507 F.2d 1338 (3rd Cir.1975).

In the instant case, the Union claims that Katz was negligent in advising it that it could lawfully pay the attorneys' fees to defend its officers charged with criminal activity. In support of this contention, the Union primarily relies on the holding of the United States District Court for

the Eastern District of Pennsylvania in *United States v. Roofers Local 30,* 686 F.Supp. 1139 (E.D.Pa.1988), *affirmed* 871 F.2d 401 (3rd Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 363, 107 L.Ed.2d 350 (1989). The court in *Roofers Local 30* stated:

> The use of union funds to pay for bail bonds, criminal defense and related costs incurred in criminal cases against Union officials is a breach of the Union officers' fiduciary responsibility under the LMRDA, [Labor Management Reporting and Disclosure Act], 29 U.S.C.A. § 501, and constitutes illegal disbursements. (citations omitted)

*Id.* 686 F.Supp. at 1166.

The Union's reliance on the District Court's holding is misplaced. As we stated above, an informed judgment on the part of counsel, even if subsequently proven erroneous, is not negligence. *Mazer v. Security Insurance Group, supra.* Based on our review of the law at the time Katz advised the Union that it could lawfully pay the attorneys' fees to defend its officers charged with criminal activity, we find no negligence on the part of Katz.

Unions have been paying the legal fees of, or on behalf of, its members since the early part of the century. *See United Mine Workers of America v. Illinois State Bar Association,* 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967) (wherein the Supreme Court held that the First and Fourteenth Amendments gave unions the right to hire attorneys on a salary basis to assist its members in assertions of legal rights). The Union that is party to the case presently before us has paid for the legal defense of its members since at least 1972. *U.S. v. Local 30,* 871 F.2d 401, 407 (3rd Cir.1989).

The Union claims that Katz was negligent because he should have known that the payment of legal fees was in violation of § 501 of the Labor Management Reporting and Disclosure Act, (hereinafter referred to as the "LMRDA"), 29 U.S.C.A. § 501. This provision generally deals with the fiduciary responsibility of officers of labor organizations.

The purpose of § 501 is not to provide judicial oversight to union decisions, but to redress the unreasonable and arbitrary action of unions. *Kleppick v. Pennsylvania Telephone Guild,* 631 F.Supp. 1073, 1081 (W.D.Pa.1986). A brief review of the various cases construing the application of § 501 to the payment of legal fees reveals that Katz was not negligent.

In *Highway Truck Drivers and Helpers Local 107 v. Cohen,* 182 F.Supp. 608 (E.D.Pa.1960) *affirmed* 284 F.2d 162 (3rd Cir.1960) *cert. denied* 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961), union members brought suit under the LMRDA against: (1) union officials, who had allegedly conspired to cheat and defraud the union of large sums of money; and (2) against the union to enforce fiduciary responsibilities of union officials. The union officials filed a motion to have the complaint dismissed, and the union members sought a preliminary injunction to prohibit the use of union funds to defray the legal costs and other expenses being incurred by union officials in defense of civil and criminal actions brought against them. The District Court held that the union could not pay for legal fees of union officials for alleged conspiracy to cheat and defraud the union of money, even though the majority vote at a regular union meeting authorized such expenditures. In reaching its decision, the District Court recognized that there are circumstances when the union could pay the legal fees for its officers. *Id.* 182 F.Supp. at 620–21. Specifically, the court stated:

There are undoubtedly situations in which a suit against a union officer would have a direct and injurious effect upon the union itself or would in reality be directed at the union. In such a situation the union would have the power to lend its financial support to such officer. When the question of whether the union has a sufficient interest to spend large sums of money to defend such a suit arises, it must ultimately be resolved by the court.

*Id.* 182 F.Supp. at 620.

In the related case of *Highway Truck Drivers and Helpers Local 107 v. Cohen,* 334 F.2d 378 (3rd Cir.1964) *cert.*

*denied* 379 U.S. 921, 85 S.Ct. 277, 13 L.Ed.2d 335 (1964), the Court of Appeals for the Third Circuit held that payment by the union for legal fees to its officers in connection with charges brought against them for looting the union treasury was inconsistent with the aims and purposes of the LMRDA and beyond the powers of the local union. Thus, the Third Circuit in *Cohen* concluded that a money judgment was properly entered against the union officers for the amount of such fees paid by the union and a subsequent amendment to the international's constitution ratifying the resolution of the local which approved the payments did not and could not validate an illegal local resolution.

In *Urichuck v. Clark*, 689 F.2d 40 (3rd Cir.1982), a union and several of its officers were sued in separate lawsuits for alleged violations of the LMRDA. The plaintiff in *Urichuck*, a union member, filed suit to prohibit the joint legal representation of the union and its individual officers and to prohibit the union from paying the officers' legal fees in the underlying suit. The court began its analysis by recognizing that a union could not provide counsel for its officers in suits against them if the interests of the union as distinguished from the interests of its officers in the outcome of the case may be adverse. The *Urichuck* court stated: "Conflict of interest between a union and its officers is most clearly apparent in suits brought pursuant to Title V of the LMRDA charging union officers with pilfering union funds." *Id.* 689 F.2d at 42–43. The *Urichuck* court completed its analysis by holding that actions of union officers are tested by common law theories of agency; if their actions fall within the scope of their authority, they are acting for the union and whatever liability flows from their actions, flows to the union also, but if their illegal actions fall without the scope of this authority, they must bear the consequences alone. Ultimately, the *Urichuck* court found that since the verdict was against both the individual defendants and the union, there was an indication that the individuals were found to be acting on behalf of the

union such that the union was free to reimburse the union officers for counsel fees. *Id.* 689 F.2d at 44.

None of the cases we have reviewed, nor any of the cases cited by the Union are factually similar to the instant case. Until the decision in *United States v. Roofers Local 30, supra,* which was filed subsequent to the issuance of Katz' advice to the Union, there was no clear statement of the law with these particular facts on which Katz could base his recommendation. Katz was left to his perception of the existing law. We do not presume to disagree with the District Court's finding in *United States v. Roofers Local 30, supra,* that the payment of legal fees for the thirteen Union officials was a breach of the Union officers' fiduciary responsibility under § 501 of the LMRDA. However, at the time of the issuance of Katz' advice, court decisions, as set forth above, justified an opposite result. Under the cases prior to the District Court's decision in *Roofers Local 30,* the following argument could have been developed. The actions of the thirteen Union officials were not adverse to the Union. Their efforts were for the purpose of promoting the widespread existence of the Union. While their acts were ultimately found to be illegal, they were done on behalf of the Union. Thus, Katz' advice that the Union could lawfully pay the attorneys' fees to defend its officers charged with criminal activity, was not negligent.[2] *See Mazer v. Security Insurance Group, supra* (an informed judgment on the part of counsel, even if subsequently proven erroneous, is not negligence).

Further, we note that the Union will not be denied a remedy by our decision. Assuming that it can act in a timely manner, the Union has the opportunity to seek

---

2. For further support of Katz' perception of the law as it existed prior to the District Court's decision in *Roofers Local 30, supra, see U.S. v. Hart,* 417 F.Supp. 1314 (S.D.Iowa 1976) (wherein the District Court upheld the payment of attorneys' fees for union officials charged with criminal offenses arising out of strike related violence and specifically held that such payment was not a breach of § 501); *and Frantz v. Sheet Metal Workers Union Local No. 73,* 470 F.Supp. 223 (N.D.Ill 1979) (wherein the District Court upheld the payment of attorneys' fees for union official charged with antitrust violations).

reimbursement for the attorneys' fees paid to defend the thirteen Union officials. It can implement the proper procedure against the parties that benefitted from the legal representation: the thirteen Union officials themselves.

■ Finally, the Union baldly asserts that Katz breached the fiduciary duty owed to it. The Union merely refers to the decision in *Newman v. Silver*, 553 F.Supp. 485 (S.D.N.Y.1982), *affirmed in part, vacated in part*, 713 F.2d 14 (2d Cir.1983), which held that an attorney is bound to conduct himself as a fiduciary or trustee occupying the highest position of confidence and trust such that in all relations with clients, he must exercise and maintain the utmost good faith, integrity, fairness and undivided loyalty. The Union then claims that Katz' advice did not and could not benefit it since the Union did not receive anything for its expenditures. We fail to understand how this argument establishes the Union's claim that Katz breached the fiduciary duty owed to it. As explained more fully above, while Katz' advice may not have been correct, there is no indication that he acted in any manner other than with the utmost good faith, integrity, fairness and undivided loyalty. Thus, we find no merit to this claim.

Order affirmed.